In re SKELLY'S ESTATE.

SKELLY et al, Respondents, v. SKELLY et al., Appellants.

(143 N. W. 274.)

1. Descent and Distribution—Heirships, Determination of—Sufficiency of Evidence—Costs on Appeal.

In a proceeding to determine who were the heirs of a decedent, evidence held insufficient to sustain a finding by trial court in favor of one set of claimants. Held, further, that the evidence likewise fails to show a preponderance in favor of the opposing set of claimants, and that, therefore, costs will not be granted to appellants.

**2.    Same—Determination of Heirship—Death of Heir Before Determination.**

Where one of the heirs of the decedent died without issue prior to determination of the heirship, her interest in the estate of said decedent does not pass to the other heirs through probate of the original estate.

(Opinion filed October 6, 1913.)

Appeal from Circuit Court, Lawrence County.    Hon. LEVI McGEE, Judge.

Proceeding to determine the heirs of John H. Skelly, deceased. From a judgment in favor of Daniel Skelly and others, and from an order denying a new trial, Edward Skelly and others appeal. Reversed and remanded.

*Robert N. Ogden,* for Appellants.

A reading of the testimony as it appears in the record, discloses a large preponderance in favor of the appellants.

Any other conclusion than that appellants are the rightful heirs of John H. Skelly, deceased, can not fairly be reached after an examination of the evidence.

Unless this court is disposed to absolutely eliminate from its consideration the declarations of the deceased himself, the testimony of the witnesses Manning, Allen, Seim, and Fowler, and the affidavits of Schwarzwald, Russell, Baxter and Katen and the testimony the last four stated their willingness to give, or unless the court is disposed to hold that these witnesses have deliberately committed perjury, this case should be reversed, and upon reversal, the testimony being so overwhelmingly for the appellants, judgment should be entered for them in this court.

The trial court, in overlooking or disregarding the preponderance and weight of the evidence in favor of appellants, and deciding that the respondents are the heirs of the deceased, and in refusing to find for appellants and to enter judgment for them, and in refusing to grant appellants a new trial, has so abused discretion as to fully justify this court in reversing the judgment and entering judgment for appellants.

*Martin & Mason,* for Respondents.

Appellants have failed to show themselves entitled to have the court's findings set aside, for three reasons: First, they have failed to show that the preponderance of the evidence is against

the facts as found by the court; second, it appears that the facts as found by the court are supported by a clear preponderance of the evidence; third, the evidence introduced on behalf of the appellants, taken by itself, proves beyond any reasonable doubt that the decedent in this case, who came to America and was naturalized in King's county, New York, in 1851, is not the same John Skelly that appellants claim came to this country just at the outbreak of the Civil war, who wrote a few letters to his sister in Brooklyn after entering the army and then was never heard from again.

The trial court did not overlook the testimony of Fowler, Allen, Manning, and Seim. This evidence was carefully analyzed and gone over by counsel for both appellants and respondents.

Admitting, all of the weaknesses of evidence pointed out by appellants' counsel, there is still sufficient evidence, to-wit, the unchallenged portions of the testimony of Mrs. Thompson and of Alice Rose McGinniss, to support the findings of the court: Harvester Company v. McKeever, 21 S. D. 93, and cases there cited.

GATES, J. This is an appeal from a judgment determining the heirs of the deceased, and from an order denying a new trial. The trial court found that respondents, designated in the briefs as the New Orleans claimants, were the heirs of the deceased, and determined their respective shares as follows: To Daniel Skelly, of Jersey City, N. J., one-fourth; to Rose Ann Fox, of Jersey City, N. J., one-fourth; to Edward J. McGinnis, one-eighth; to Alice Rose McGinnis, of Sioux City, Iowa, one-eighth; to Mary Margaret Thompson, of New Orleans, La., one-eighth; to Annie McGinnis, Mary Frances McGinnis, Lillie Cecil McGinnis, and Paul McGinns, all of New Orleans, La., each one thirty-second. The judgment of the court directed the administrator to immediately turn over the estate to the attorneys for said claimants. The appellants are designated in the briefs as the Brooklyn claimants.

[1] On either October 23 or 24, 1903, John H. Skelly, a resident of Deadwood, Lawrence county, S. D., died intestate. We do not know what date the trial court found to be the correct date, because only such parts of the findings as were excepted to appear in the record. The only documentary evidence in the case is an affidavit from the files of the United States Land Office, verified

by the deceased in the month of August, 1896, as follows: "State of South Dakota, county of Lawrence—ss: John H. Skelly being first duly sworn according to law, deposes and says that he is the applicant for patent for the Skelly group of mining claims, M. S. No. 1094, situate in Whitewood mining district, county of Lawrence; that he is a naturalized citizen of the United States, born in Balumeona, county of Longford, Ireland, in the year 1829, and is now a resident of the county of Lawrence and state of. South Dakota; that he took out naturalization papers in the month of April, 1851, in the Supreme Court of the county of Kings, state of New York; that deponent also served in the War of the Rebellion as a second lieutenant in Company C, Ellsworth's Zouaves, and has been honorably discharged, but has not now in his possession either the certificate of his naturalization or his discharge from the Union army, for the reason that this deponent left the same in the city of Brooklyn, New York, more than 20 years ago, when he came to the Black Hills, and has not been there since."

John Manning testified that he knew the deceased, meeting him first at Bismarck, Dak., in the latter part of 1875; that in 1876, he met deceased at Deadwood, and knew him intimately from that time until his death; that the deceased remained continuously in the Black Hills from his arrival in 1875 until the time of his death, except for very brief absences in the last few years of his life; that the deceased had told him that he came to the Black Hills from the state of New York. James W. Allen testified that he had been intimately acquainted with deceased from 1876 until the time of the death, and that deceased had come to the Black Hills from the state of New York. Olaf Seim testified that he had been intimately acquainted with deceased for upwards of 20 years; that deceased had frequently referred to his earlier life; had told witness of sisters that resided in Brooklyn, N. Y., and also that he had a brother; witness was unable to recall their names; that he told witness about joining a fire company in Brooklyn, and about serving in the United States army during the Civil war, and that a short time prior to his death he told witness that his sisters resided in Brooklyn, N. Y. It does not appear from the record that the foregoing witnesses were called on behalf of either set of claimants.

The evidence on behalf of the New Orleans claimants tends to show that Patrick Skelly and his wife, Rose, whose maiden name was Fallon, residents of the parish of Killishea, county of Longford, Ireland, had a family of nine children, Ann, Bridget, Mary, Margaret, Daniel, Edward, Michael, John H., and a son who died in infancy. Ann married one McGinnis, and died in 1876 or 1877. Their family consisted of John J., Alice Rose, Mary Margaret, Daniel H., and Edward J. John J. McGinnis died leaving as his heirs, his children, Annie, Mary Frances, Lillie Cecile, and Paul. Bridget Skelly married one Hanneberry, who died, and after his death she entered the convent of the Good Shepherd at New Orleans, where she remained from 1885 until her death. She died without issue on November 15, 1903, which date it will be noticed was subsequent to the date of the death of John H. Skelly at Deadwood, S. D. Mary Skelly died at New Orleans in August, 1853. Daniel Skelly died in July, 1876, leaving his children Daniel and Rose Ann, who married one Fox. Edward Skelly died years ago in Yazoo City, Miss. Michael Skelly was last heard of in Buenos Ayres, South America.

Mary Margaret Thompson, daughter of Ann Skelly McGinnis, was born in New Orleans in 1868, and, after identifying the family, testified that her uncle, John H. Skelly, came to this country in 1849 or 1850; that he was in New Orleans in 1850; that he went thence to Jersey City, thence to Brooklyn about 40 years ago (1866); that her Aunt Bridget visited him in Brooklyn about 1873; that her Aunt Bridget told her just three months before her death "that Bridget's brother, John H. Skelly, was in Deadwood; that she corresponded with him in Deadwood; that in 1885 she caused Alice Rose McGinnis to write a letter to John H. Skelly in Deadwood, S. D.; and that he sent Bridget some money." Witness further testified that her mother, Ann, "was only sick four days. She took sick of a Sunday and died Wednesday morning June 6, 1876," aged 36 years, but it appears from the calendar that June 6, 1876, was on Tuesday. Attention to this discrepancy is called because her deposition fairly bristles with exact dates, and she appeared to be very sure of dates. It appears in the deposition of her sister that their mother died on June 6, 1877.

Edward McGinnis, a brother of Mary Margaret, testified, identifying the family, and that his Aunt Bridget never told him about hearing from her brother John H. Skelly, but his testimony is not otherwise of importance.

Alice Rose McGinnis, a sister of the last witness, testified that she was born in New Orleans in 1873, and that she was a sister in the Convent of the Good Shepherd at Sioux City, Iowa; that her mother, Ann, and her uncle, John H Skelly, come to this country together in 1842, landing at New Orleans; that they were the only members of the family that came over at that time; that her mother died in New Orleans, June 6, 1877; that she remembered when her uncle, John H. Skelly, called at their home in New Orleans; that she learned that he went to Deadwood, S. D., from Brooklyn, "about twenty-eight years ago" (1878); that in 1885 she wrote him a letter addressed to John· H. Skelly, Deadwood, S. D., that she saw and read the answer to that letter written to her Aunt Bridget; that this aunt died in 1893; that she supposed the letter was destroyed. She did not testify as to its contents, nor that money was sent.

John Donohue, the only disinterested witness on behalf of the New Orleans claimants, testified that he was born in the year 1847; that he was at one time an engineer in the Convent of the Good Shepherd in New Orleans, when Bridget Hanneberry resided there; that he knew Bridget in the old country. He gave testimony fully identifying the John H. Skelly, whom he knew as a member of the family of the New Orleans claimants, and that he knew John H. Skelly in the town of Longford, Ireland; that they were boys together, and lived about five miles apart; that they used to meet every Saturday, that was market day, and very often met without going to the market, and that after market hours they would go in and settle up their business and have a minute's talk about the business of the day and how the market went; that at the time John H. Skelly came to this country witness was 7 or 8 years old (upon cross-examination 6 or 7), and that John H. Skelly must have been 12 or 14, or maybe more; that there were two separate and distinct Skelly families in the county of Longford, Ireland; that the name John Skelly is a very common name in Ireland, and a common name in the county of Longford; that witness came to this country in 1869 or 1870;

that he never saw John H. Skelly after the latter left Ireland; that while he was an engineer in the convent he and Bridiget used to talk together frequently; that Bridget talked of her brother John H. Skelly; that she said she went to New York to see him about 30 years ago (1876); that she saw him; that she said that after he went out West she lost track of him; that Bridget was in the convent about 30 years, and was "about 84 or something" when she died in 1903; that Bridget told him she had two letters from her brother John H. Skelly after he went out West, and then he stopped writing altogether; that at the time John H. Skelly last wrote was a good time prior to when witness was in the convent; that witness was in the convent about 11 years ago (1895); that after he left the convent Bridget used to visit his home about once a week, and was always talking about the family. According to this witness John H. Skelly could not have come to this country earlier than 1853, and not later than 1855, and according to his testimony, John H. Skelly was born about the year 1838. This would preclude him from being the John H. Skelly who took out his naturalization papers in Brooklyn in 1851.

It is a significant fact that nowhere in the testimony on behalf of the New Orleans claimants is any mention made that their John H. Skelly was ever in the Union army. If he had been, Bridget would surely have said something about it to Donohue, or to Mary Margaret Thompson, or to Alice Rose McGinnis. The testimony of Donohue also contradicts that of Mary Margaret Thompson in regard to the time John H. Skelly came to this country, and the John H. Skelly known by him could not have been in New Orleans in 1850. Stress is laid upon the fact that Alice Rose McGinnis was a sister in a convent as tending to make her testimony the more credible. We are not disposed to throw discredit upon her testimony in regard to the writing of the letter to John H. Skelly at Deadwood. Giving this full credence, the fact remains that she did not testify that the John H. Skelly of Deadwood acknowledged relationship with her or her Aunt Bridget, nor did she testify that he sent money to her Aunt Bridget, as testified to by Mary Margaret Thompson. The testimony as to the sending of money rests solely upon the testimony of the latter witness, who claimed that her Aunt Bridget so informed her three years before she died, and also that her sister Alice so

told her. It is reasonable to suppose that such an important factor in the determination of the relationship of the New Orleans claimants with the John H. Skelly of Deadwood would have been testified to by Alice. If money was sent or relationship acknowledged those facts should have been proved by the best evidence the case afforded. We are not therefore disposed to place much reliance upon the testimony of Mary Margaret Thompson in this behalf. · It is not inconsistent with a belief in the truthfulness of the witness Alice as to. the writing of the letter and the receipt of a reply to believe that the John H. Skelly of Deadwood did not acknowledge relationship to her or her Aunt Bridget. Again, this witness testifies to having seen John· H. Skelly. In this we think she must have been mistaken, because it is improbable from the testimony that their John H. Skelly was ever in New Orleans after the year 1853 or 1854. Again, she testifies to facts related by her mother when witness was only three, or at the most, four years of age. If John H. Skelly came to this country about 1854 and was born in 1838, he would have been 15 years of age, and her mother, Ann, would have been 13 years of age, but witness testified that the two of them came to this country in 1842. At that time, her mother would have been only two years old, and this date was five years prior to the birth of John Donohue, who knew their John H. Skelly in Ireland. 'Considering the mistakes in the testimony above pointed out, is it not possible, nay probable, that she may at this late date be mistaken in the name of the place to which she as a girl of 12 years, addressed the letter?

It· is stated in respondent's brief: "It appears from the evidence, and it is conceded by all parties, that the John H. Skelly · who died at Deadwood on the 23d day of October, 1903, was the only person of that name who ever lived in Deadwood." We find nothing in the record bearing out this statement, and it does not appear to be inserted in respondents' brief, because they deem the statement of the contents in appellants' brief to be imperfect and unfair. On previous pages they had supplied what was known under the former practice as 'Respondents' additional abstract,' and this statement is not. a part of that, but it appears in the statement of respondents' theory of the case.

It is noteworthy, also, in considering the testimony of appellants that none of the witnesses on behalf of the New Orleans

claimants, other than Alice, testified to ever having seen their John H. Skelly. According to the testimony of Mary Margaret Thompson, derived from information from her Aunt Bridget, John H. Skelly could not have been in New Orleans after the year 1866, which date was seven years prior to the birth of Alice. Let it also be noted that the witness Donohue testified that Bridget in her talks about the family never made mention of having received money from John H. Skelly of Deadwood, but on the contrary she told him that she got two letters after he went West and then had lost track of him. So far as the record shows, Bridget never had but one conversation with Mary Margaret in relation to John H. Skelly. It is not strange that in this one conversation she should have told about his being in Deadwood and receiving money from him, while in her many talks with Donohue about him she said he had gone West and that she had not heard from him for years?

[2] In our opinion the preponderance of the evidence does not indicate that the New Orleans claimants are the immediate relatives of the deceased, but, even if they were, the judgment of the trial court should be vacated for the reason that Bridget Hanneberry survived him. If she was a sister of the deceased, her relatives, the respondents, could not immediately acquire her interest in his estate through the probate proceedings in the matter of the estate of John H. Skelly. By the provisions of section 307, Probate Code, such a short cut may be made in the case of the death of a minor, under certain conditions, but nowhere in the statute is there any authorization for the distribution of the estate of an adult person in and as a part of the estate of the deceased person from whom such adult person inherits.

In the view we take of the case it is not necessary to recapitulate the testimony on behalf of the Brooklyn claimants. It is fully as contradictory as is that above set forth. Suffice it to say that in our opinion the record likewise fails to show a preponderance of the evidence in their behalf. Being of that opinion, it would be improper to grant costs to appellants.

The judgment and order appealed from are reversed, without costs, and the cause is remanded to the trial court for further proceedings according to law.

POLLEY, J., taking no part in the decision.